[No. G045846. Fourth Dist., Div. Three. Jan. 15, 2013.]

JAMES G. BRAKKE, Individually and as Trustee, etc., et al., Plaintiffs and Appellants, v.
ECONOMIC CONCEPTS, INC., Defendant and Respondent.

## COUNSEL

Crandall, Wade & Lowe, James L. Crandall and Geoffrey T. Hill for Plaintiffs and Appellants.

Pietragallo Gordon Alfano Bosick & Raspanti, Robert D'Anniballe, Jr.; Lewis Brisbois Bisgaard & Smith, Lisa Willhelm Cooney and Ruben Tarango for Defendant and Respondent.

## OPINION

**RYLAARSDAM, J.**—Plaintiffs James G. Brakke, Matthew F. Schafnitz, Kevin McWilliams, and Charles R. Fosdick are the principals of Dealer Management Group, Inc., a subchapter S corporation. Brakke also served as the trustee of the firm's defined benefit pension plan. Plaintiffs sued defendants American General Life Insurance Company (American General), Economic Concepts, Inc. (ECI), and three other parties. The first amended complaint alleged defendants persuaded plaintiffs to establish the pension plan by representing contributions to the plan were tax deductible under the Internal Revenue Code. Subsequently, the Internal Revenue Service (IRS) determined the pension plan failed to qualify for favorable tax treatment, resulting in plaintiffs paying back taxes and penalties.

The amended complaint contained causes of action for fraud, negligent misrepresentation, breach of fiduciary duty, negligence, and a violation of California's unfair competition law. American General filed a demurrer in which ECI joined. The trial court sustained the demurrer without leave to amend and dismissed the action as to these parties.

Plaintiffs appealed, but later settled with American General and dismissed the appeal as to it. Arguing they can "allege that the IRS has long criticized many of the . . . features that characterized th[eir pension p]lan" and "at the very least, [d]efendants had to have had serious concerns about whether contributions to the [p]lan would be tax deductible," plaintiffs contend the trial court erred by declining to grant leave to amend the complaint as to ECI. We conclude the trial court properly ruled on the demurrer and affirm the judgment.

Robert J. D'Anniballe, Jr., applied to appear as counsel *pro hac vice* for ECI. We granted his application. ECI moves to strike material from plaintiffs'

opening brief. This motion is denied. When an appellate brief contains references to matters not supported by the record on appeal, we can simply ignore these references rather than strike them. (Cal. Rules of Court, rule 8.204(e)(2)(C); *Connecticut Indemnity Co. v. Superior Court* (2000) 23 Cal.4th 807, 813, fn. 2 [98 Cal.Rptr.2d 221, 3 P.3d 868].)

## FACTS AND PROCEDURAL BACKGROUND

According to the amended complaint and its attached exhibits, ECI markets and administers pension plans, including plans designed to comply with former section 412(i) of the Internal Revenue Code (26 U.S.C. former § 412(i), now 26 U.S.C. § 412(e)(3); hereinafter 412(i) plan). In late 2002, ECI's managing agent, Ken Hartstein, contacted plaintiffs about establishing a defined benefit pension plan for Dealer Management Group, Inc. Attached to the amended complaint as exhibit A and incorporated by reference were ECI's 412(i) defined benefit plan marketing materials received by plaintiffs.

The amended complaint alleged Hartstein touted ECI's expertise in developing pension plans, purportedly telling plaintiffs its "412(i) [p]lan was legal and complied with the tax code," and "annual contributions to their . . . [p]lan [in the form of policy premium payments] would be tax deductible." ECI's marketing materials declared ECI "has secured a letter opinion of 'more likely than not' from" a named law firm, and "[a]ll participating employers in the . . . [p]lan will receive an individual IRS letter opinion approving the plan."

Alleging that they relied on Hartstein's representations and similar statements made by agents of the other named defendants, plaintiffs created their defined benefit pension plan trust in 2003. Attached to the amended complaint as exhibit B and incorporated into it by reference is a 2010 agreement between the pension plan and the IRS. According to the agreement, plaintiffs' plan was "designed to be a fully insured plan under . . . section 412(i)," and it "received a favorable determination letter dated August 21, 2003 with respect to the language in the [p]lan." Plaintiffs funded the plan by purchasing a life insurance policy from American General, paid the premiums for the policy, deducted these payments on tax returns in 2004 and 2005, and paid administrative fees to ECI and another defendant.

In 2006, the IRS audited plaintiffs' 412(i) plan. Citing a 2004 revenue ruling, the IRS concluded the plan failed to comply with certain requirements of former section 412(i) and disallowed the 2004 and 2005 deductions. As a result, plaintiffs incurred damages, including costs related to the IRS audit and payment of back taxes and penalties.

Plaintiffs sued ECI and others alleging the statements by Hartstein and other agents were false and defendants "knew them not to be true or had no reasonable ground for believing them to be true." American General's demurrer, in which ECI joined, argued in part "[p]laintiffs' claims . . . fail as a matter of law because they are based on unactionable future predictions of tax law upon which [p]laintiffs could not have justifiably relied."

The trial court sustained the demurrer without leave to amend and dismissed the action as to these defendants. Citing federal district court decisions dismissing similar lawsuits, the court's minute order explained: "All of the causes of action are based on defendants' alleged misrepresentations made in 2002 and 2003 concerning the tax consequences of the . . . [p]lan," and "[i]t was not until 2004 that the IRS issued [r]evenue [r]ulings and [p]roposed [r]egulations under which the [p]lan was declared unlawful . . . . Plaintiffs have not shown how they can amend to show that the representations made by the defendants were misrepresentations, or how, even if the representations could be considered . . . representations of fact and not mere future predictions, plaintiffs could have reasonably relied on them."

## DISCUSSION

When reviewing a judgment of dismissal based on the sustaining of a demurrer without leave to amend, an appellate court first exercises its independent judgment to determine "whether the complaint states a cause of action as a matter of law. [Citation.]" (*McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1508–1509 [97 Cal.Rptr.3d 555].) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) If an appellate court concludes the complaint fails to state a cause of action, it must decide "whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Ibid.*)

■ While not expressly acknowledged, plaintiffs apparently agree that all of the amended complaint's causes of action are premised on the representations allegedly made by Hartstein for ECI and by the agents of the other

named defendants. Both parties also recognize, " '[t]he necessary elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.' [Citations.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 [44 Cal.Rptr.2d 352, 900 P.2d 601], fn. omitted.) " '[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered.' [Citation.]" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974 [64 Cal.Rptr.2d 843, 938 P.2d 903].) The elements at issue here are whether defendant made actionable misrepresentations concerning the favorable tax consequences of the 412(i) plan and, if so, whether plaintiffs reasonably relied on these representations.

■ This lawsuit arose from the failure of plaintiffs' pension plan to qualify for favorable tax treatment. A 412(i) plan is "an employer-sponsored defined benefit plan that provides retirement and death benefits to its participants . . . . To qualify as an insurance contract plan under § 412(i), the plan must meet certain requirements listed in the statute, including that the defined benefits provided by the plan must be equal to the benefits provided under each insurance contract at normal retirement age. [Citation.] The plan requires careful design and 'sophisticated actuarial calculations . . . to determine a benefit formula that is consistent with the employer's objectives and budget.' [Citation.] To create such a plan, an employer establishes a trust to hold the plan's assets, and the trust uses tax-deductible employer contributions to purchase and maintain life insurance and/or annuity policies for the plans. [Citations.]" (*Zarrella v. Pacific Life Ins. Co.* (S.D.Fla. 2010) 755 F.Supp.2d 1218, 1221.)

Focusing on the amended complaint's allegation Hartstein told them "contributions to a 412(i) [p]lan would be entirely tax deductible," plaintiffs conclusorily assert the first amended complaint alleges all of the elements for a fraud claim. For two reasons, we disagree.

■ First, the amended complaint also incorporated two documents, both of which contain recitals inconsistent with the amended complaint's reliance on Hartstein's alleged statements. Both exhibit A, ECI's marketing materials, and exhibit B, the 2010 settlement agreement between IRS and plaintiffs' defined benefit pension plan, reflect plaintiffs would and did receive opinion letters stating their plan " 'more likely than not' " qualified for favorable tax treatment. While the "allegations [of a complaint] must be accepted as true for purposes of demurrer," the "facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence. [Citation.]" (*Dodd v. Citizens Bank of*

*Costa Mesa* (1990) 222 Cal.App.3d 1624, 1626–1627 [272 Cal.Rptr. 623]; see *Alphonzo E. Bell Corp. v. Bell etc. Synd.* (1941) 46 Cal.App.2d 684, 691 [116 P.2d 786] ["All these conclusions of the pleader are contrary to the express terms of the instrument . . . which is pleaded in full and made a part of the complaint" and "[u]nder these circumstances the court will, in hearing on the demurrer, examine the exhibits and treat the pleader's conclusions as surplusage."].)

Second, the amended complaint and the incorporated exhibits reflect the representations concerning favorable tax treatment for plaintiffs' 412(i) plan by ECI and the other defendants occurred in 2002 and 2003. Plaintiffs established their pension plan at that time. The IRS did not audit the plan and conclude it failed to qualify for favorable tax treatment until 2006. Further, the IRS's decision was based on a February 2004 revenue ruling. (Rev. Rul. 2004-20, 2004-10 I.R.B. 546 [§ 412(i) plans; deductibility; listed transactions].) That ruling expressly dealt with the deductibility of 412(i) plans and declared "a qualified pension plan cannot be a section 412(i) plan if the plan holds life insurance contracts and annuity contracts for the benefit of a participant that provide for benefits at normal retirement age in excess of the participant's benefits at normal retirement age under the terms of the plan." The same day the IRS released this ruling, it also issued Revenue Procedure 2004-16, 2004-10 I.R.B. 559 (fair market value; distributions; qualified retirement plans). Acknowledging "[t]he current regulations do not define 'fair market value' or 'entire cash value' and questions have arisen regarding the interaction between these two provisions," Revenue Procedure 2004-16, provided interim guidance on how fair market value may be determined in the instance of distributions from a qualified retirement plan.

In *Berry v. Indianapolis Life Ins. Co.* (N.D.Tex. 2009) 638 F.Supp.2d 732, a federal district court dismissed fraud and negligent misrepresentation claims in multidistrict litigation based on factual allegations similar to those presented in this case. *Berry* held "as a matter of law, regulations and rulings by the IRS in 2004 and 2005 cannot be used to show that statements or omissions purportedly made in 2001 and 2002 were false when made . . . . The amended pleadings . . . lead to only one conclusion, that is, the . . . [p]laintiffs are, indeed, alleging that [the defendant insurer's] agents were giving opinions regarding future tax treatment by the IRS," and " '[a]s a matter of law, any representation or prediction by any . . . agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either an non-actionable opinion or was unjustifiably relied upon.' [Citation.]" (*Id.* at p. 739.) The only significant distinction between *Berry* and this case is that ECI's agent made representations concerning the favorable tax treatment for plaintiffs' 412(i) plan in 2002 and 2003 rather than 2001 and 2002. Consequently, as the *Berry* court concluded "[p]laintiffs have failed to

explain *why* the alleged representations by [ECI's] agent[] were false when made . . . ." (638 F.Supp.2d at p. 738.)

■ Plaintiffs cite the exceptions to the general rule that, to be actionable, a misrepresentation must be of an existing fact, not an opinion or prediction of future events. (*Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn.* (1988) 205 Cal.App.3d 1415, 1423 [253 Cal.Rptr. 289].) They arise "(1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion. [Citation.]" (*Borba v. Thomas* (1977) 70 Cal.App.3d 144, 152 [138 Cal.Rptr. 565].) But in an earlier published ruling in the *Berry* litigation (*Berry v. Indianapolis Life Ins. Co.* (N.D.Tex. 2009) 600 F.Supp.2d 805), the district court held the foregoing exceptions did not apply in this context because "it is inherently unreasonable for any person to rely on a prediction of future IRS enactment, enforcement, or non-enforcement of the law by someone unaffiliated with the federal government. As such, the reasonable reliance element of any fraud claim based on these predictions fails as a matter of law." (*Id.* at p. 819, fn. 19; see *Holder v. Home Sav. & Loan Assn.* (1968) 267 Cal.App.2d 91, 106–107 [72 Cal.Rptr. 704] ["reliance may be made by a buyer of real estate upon representations as to existing tax liens, amounts of taxes for current or prior years, or assessed values for current or former years," but "[t]he rule is different as to statements with regard to future assessments or levies of taxes" because "[t]he fixing of assessed values of property and of tax rates is solely within the power of public officials, whose decisions are not and should not be subject to control by a property owner, so that representations made by a private person as to such matters may not justifiably be relied on"].)

■ We agree with the holdings in the *Berry* cases. Plaintiffs have failed to allege the statements by defendants' agents concerning the favorable tax treatment of plaintiffs' 412(i) plan were false when made and, to the extent they could be so construed, it simply was not reasonable for plaintiffs to rely on representations concerning how the IRS would treat their pension plan in the future.

In support of their argument, plaintiffs cite *Cohen v. S & S Construction Co.* (1983) 151 Cal.App.3d 941 [201 Cal.Rptr. 173] and *Furla v. Jon Douglas Co.* (1998) 65 Cal.App.4th 1069 [76 Cal.Rptr.2d 911]. These cases are unpersuasive. In *Cohen*, the plaintiffs bought a view lot in a new development controlled by the defendant, paying a premium for the parcel based on allegedly false representations the association's covenants, conditions and restrictions protected the view and the architectural committee would not

authorize fencing or landscaping that would interfere with it. *Furla* involved an action by the buyer of a real estate parcel against the seller and his agent for allegedly representing the lot to be approximately 5,500 square feet when it was actually only 4,300 square feet. Neither case is analogous to a situation where the defendant is making a representation as to the future decision or conduct of a third party governmental agency. (*Borba v. Thomas, supra*, 70 Cal.App.3d at p. 155 ["statement that there would be no problem getting Bureau approval is a representation of future conduct of public officials" and the plaintiff "had no right to rely on [the defendant's] expression of opinion concerning the future decision of the Bureau"].)

■ Plaintiffs also attack our reliance on the federal district court's decisions in *Berry v. Indianapolis Life Ins. Co., supra*, 638 F.Supp.2d 732 and *Berry v. Indianapolis Life Ins. Co., supra*, 600 F.Supp.2d 805. They note these rulings are not controlling precedent. We agree. (*Donley v. Davi* (2009) 180 Cal.App.4th 447, 461 [103 Cal.Rptr.3d 1].) But "[w]hile decisions of federal courts in matters of state law are not binding on state courts, they may be persuasive [citations.]" (*Estate of Sloan* (1963) 222 Cal.App.2d 283, 293 [35 Cal.Rptr. 167].)

As mentioned above, the *Berry* cases involved litigation brought by residents of several different states, including California, concerning 412(i) plans subsequently disqualified by the IRS. Discussing "the substantive merits of the fraud allegations," *Berry* concluded "the various states' laws are sufficiently congruous to allow [common] analysis" (*Berry v. Indianapolis Life Ins. Co., supra*, 600 F.Supp.2d at p. 818), and cited *Alliance Mortgage Co. v. Rothwell, supra*, 10 Cal.4th 1226 when setting forth the elements of a fraud cause of action. (*Berry v. Indianapolis Life Ins. Co., supra*, 600 F.Supp.2d at pp. 818–819.) Again, discussing the exceptions to the general rule against basing an action for deceit on opinions or predictions about future events, *Berry* cited the Court of Appeal's decision in *Borba v. Thomas, supra*, 70 Cal.App.3d 144. (*Berry v. Indianapolis Life Ins. Co., supra*, 600 F.Supp.2d at p. 819, fn. 19.) Thus, the *Berry* court applied legal principles applicable to this action.

To support their claim the *Berry* decisions should not be followed, plaintiffs assert the district court relied on *Fisher v. Pennsylvania Life Co.* (1977) 69 Cal.App.3d 506 [138 Cal.Rptr. 181], a decision that has been criticized as wrongly decided. (*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp.* (1995) 32 Cal.App.4th 985, 990 [38 Cal.Rptr.2d 783].) But they fail to provide any citation to where either of the federal district court's decisions mention *Fisher*. What's more, *Fisher* and *Greenspan* are distinguishable because they dealt with "whether a contract clause which states that the parties relied only on representations contained in the contract

establishes, as a matter of law, that a party claiming fraud did not reasonably rely on representations not contained in the contract." (*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp., supra*, 32 Cal.App.4th at p. 987.) That is not the issue here.

Nor have plaintiffs made a sufficient showing they can amend the complaint to adequately state valid causes of action. Citing earlier administrative materials issued by the IRS, they assert "the IRS has long criticized many of the . . . features that characterized" their 412(i) pension plan and argue they could amend the complaint to allege "the IRS [had begun] to focus scrutiny directly on [s]ection 412(i) plans" similar to their plan. Plaintiffs contend "[d]efendants could not predict what the IRS would do" and "should not have emphatically promised that contributions to their [p]lan are tax deductible." (Boldface omitted.)

The first cited document, IRS Announcement No. 88-51, 1988-13 I.R.B. 34 (springing cash value life insurance contracts distributed by employee plans), cautioned if "[t]he stated cash surrender value of the policy for a specified number of years . . . is very low compared to the net single premium (or reserve) to fund future benefits under the contract," "the net present value of future benefits, the replacement cost, or another valuation method that more accurately reflects the fair market value of the rights distributed, rather than the cash surrender value, may have to be used for purposes of determining the taxable amounts under . . . the [Internal Revenue] Code." The second document is IRS Notice No. 89-25, 1989-12 I.R.B. 68 (miscellaneous taxability issues). It included "[g]uidance" on miscellaneous issues "generally affecting the taxation of distributions from qualified employee plans." Concerning the question of "[w]hat amount is included in a plan participant's gross income when the participant receives a distribution from a qualified plan that includes a policy issued by an insurance company with a value substantially higher than the cash surrender value stated in the policy," the IRS indicated under certain circumstances, the value of an insurance policy's reserves could "represent a much more accurate approximation of the fair market value of the policy when distributed . . . ." (IRS Notice No. 89-25, 1989-12 I.R.B. 68.)

These documents do not support plaintiffs' case. In *Berry*, the plaintiffs relied on the same earlier IRS documents to argue the defendants knew before 2004 that statements of favorable tax treatment for the proposed 412(i) plans were false. The district court rejected this contention. "Announcement 88-51 and Notice 89-25 fail to provide the type of definitive guidance about the legality of funding 412(i) plans with . . . specially-designed insurance

policies to support the proposition that [the insurer's] agents knew that the alleged representations were false when made . . . . In short, the Court agrees . . . that the only definitive guidance specifically applicable to the 412(i) plans at issue, and the alleged representation made regarding the tax benefits and legality of the plans, appears in the IRS's 2004 revenue rulings and 2005 final regulations." (*Berry v. Indianapolis Life Ins. Co., supra,* 638 F.Supp.2d at p. 738, fn. omitted.)

■ Finally, plaintiffs note *Berry* allowed the California plaintiffs named in that litigation to proceed with their unfair competition law claim because they amended the complaint to rely on the false advertising law (Bus. & Prof. Code, § 17500) and alleged "that 'members of the public were likely to be deceived[].' " (*Berry v. Indianapolis Life Ins. Co., supra,* 638 F.Supp.2d at p. 741.) Again, we disagree. "Unlike common law fraud, a Business and Professions Code section 17200 violation can be shown even without allegations of actual deception, reasonable reliance and damage. Historically, the term 'fraudulent,' as used in the UCL, has required only a showing that members of the public are likely to be deceived. [Citation.]" (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 838 [51 Cal.Rptr.3d 118].)

In *Berry*, the district court found the addition of the conclusory allegation that the public was likely to be deceived overcame the defendants' objection to this count. *Berry* provided no further analysis on the sufficiency of the unfair competition law count. But California cases have recognized " '[i]n order to be deceived, members of the public must have had an expectation or an assumption about' the matter in question" (*Daugherty v. American Honda Motor Co., Inc., supra,* 144 Cal.App.4th at p. 838), and "[a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL" (*Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1557 [62 Cal.Rptr.3d 177]). Given the representations in ECI's marketing materials and opinion letters that its 412(i) plan " 'more likely than not' " would qualify for favorable tax treatment, plaintiffs do not explain how they can allege they could reasonably expect or assume the IRS would never disqualify their plan or revise its interpretation of the tax laws. Nor do plaintiffs explain how they could amend the complaint to allege ECI would have a duty to inform clients of the possibility of a future change in tax law.

Therefore, we conclude the trial court properly sustained the demurrer to the first amended complaint without leave to amend.

## DISPOSITION

The judgment is affirmed. The application of Robert J. D'Anniballe, Jr., to appear *pro hac vice* for respondent is granted. Respondent's motion to strike portions of appellants' opening brief is denied. Respondent shall recover its costs on appeal.

O'Leary, P. J., and Thompson, J., concurred.