Filed 4/27/23  Sushi KJ Corp. v. Hana Escrow Co. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SUSHI KJ CORPORATION et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>HANA ESCROW COMPANY INC.,<br><br>    Defendant and Respondent. | B321923<br>(Los Angeles County Super. Ct. No. 20STCV41331) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Law Offices of Gregory S. Kim, Gregory S. Kim and Vincent Chan for Plaintiffs and Appellants.

Glenn A. Williams for Defendant and Respondent.

\* \* \* \* \* \*

In the midst of the sale of a restaurant, the seller lied to the buyer about having more than $200,000 in unpaid sales taxes. As pertinent here, the buyer sued the escrow company for negligent misrepresentation. The trial court dismissed this claim on demurrer. The buyer appeals. Because the dismissal was proper, we affirm.

## FACTS & PROCEDURAL BACKGROUND

### I.  Facts

#### A.  *Yamato Kura, LLC (Yamato) sells its restaurant, and uses Hana Escrow Company, Inc. (Hana) as the escrow agency*

In 2017, Yamato owned a restaurant in Agoura Hills, California. On December 14, 2017, Yamato signed a contract agreeing to sell the restaurant to Sang Woo Lee (Lee) for $910,000.

Yamato and Lee agreed to use Hana as the escrow agent for the transaction.

In the initial escrow instructions dated December 20, 2017, Yamato and Lee tasked Hana with conducting a "UCC-3" search for financing statements and "liens against" the restaurant, but explicitly declined to hold Hana "responsible for the sufficiency or correctness of the searches nor for any liens which may have been filed after the date of said searches." The escrow instructions placed the ultimate responsibility for assuring payments of any

2

outstanding tax bills on *Yamato*, which was tasked with "deposit[ing] into escrow" the appropriate certificates indicating that any such bills and any outstanding liens were paid off. Hana's "duties," by contrast, were "limited to the safekeeping of such money, instruments or other documents received by the escrow holder, and of the disposition of same in accordance with the written instructions accepted in this escrow."

On the same day as the initial escrow instructions were signed, Yamato's principal executed a document entitled "Transfer Disclosure Statement for Business Opportunity Sales" (Transfer Disclosure Statement). Among other things, Yamato's principal represented that Yamato had not "ever delayed E.D.D. Tax/Sales Tax for more than 3 months."

Hana performed the required lien searches in January 2018, and they revealed no outstanding sales tax liens for Yamato or its restaurant.

Yamato and Lee amended the initial escrow instructions several more times; two of those amendments are pertinent here:

● On January 19, 2018, Lee assigned "all rights, title, interest in and to the" restaurant to Sushi KJ Corporation (Sushi).

● On April 11, 2018, Yamato and Sushi signed a further amendment that (1) required escrow to close that very same day; (2) required Yamato to "guarantee[] and warrant[]" that there were no liens not previously disclosed by the lien searches performed by Hana in January 2018, and absolved Hana of any "further . . . liabi[lity]" for conducting those searches; (3) required Yamato to "warrant[] and guarantee[]" that Yamato will pay "any/all" sales taxes due to the state; (4) required Hana to withhold $75,000 of the purchase price from Yamato until such

3

time as Yamato delivered the certificates showing it had no tax liabilities with the state, which would occur "outside of escrow after close of escrow," and provided that Hana is "NOT to be further concerned with and liable for same"; and (5) specified that the "valu[e]" of "fixtures and equipment" that Sushi was buying as part of the restaurant sale was $20,000 and that Sushi "agree[d] to pay 9.50% of said amount"—which comes to $1,900—"to the California Department of Tax and Fee Administration through escrow."

The "Buyer's Final Settlement Statement" prepared by Hana on April 11, 2018, contained the following entry as a "debit" that the buyer—Sushi—had to pay: "California Department of Tax and Fee Administration for Sales Tax 9.50% on $20,000 Furniture, Fixtures and Equipment."

**B.** *After escrow closes, Sushi learns of a massive unpaid tax liability*

On April 25, 2019, just over a year after escrow closed, the California Department of Tax and Fee Administration sent Sushi a notice indicating that Yamato owed the state $285,137.08 in past taxes, interest, and penalties, and that Sushi—as the successor in interest to Yamato—now owed that amount.

## II. Procedural Background

On October 27, 2020, Sushi sued Yamato and its principal, the broker and brokerage company that represented Yamato and Lee in the transaction, and Hana. In the operative third amended complaint,[1] Sushi and Lee (its predecessor in interest)

---

[1] The trial court sustained Hana's unopposed demurrer to Sushi's initial complaint, Sushi filed but superseded its first amended complaint with a second amended complaint, and the

4

(collectively, plaintiffs) sued Hana in a single claim for negligent misrepresentation. In particular, Sushi alleged that (1) Hana "warranted and represented" in the Transfer Disclosure Statement that Yamato had never been more than three months in arrears on tax payments; (2) Yamato and its principal "warranted and represented" in the escrow instructions that they would pay taxes with the $75,000 Hana withheld during escrow; (3) Hana provided Sushi with an "inaccurate closing statement" that "showed . . . only $1,900.00 was due" to the state rather than the $285,137.08 actually due; and (4) Hana "with[held] information" of an unspecified nature that somehow made the "above described" "statements" "misleading" and "incomplete."

Hana demurred to this iteration of the complaint. Following a full round of briefing and a hearing, the trial court sustained the demurrer without leave to amend. The trial court reasoned that Lee was not a proper plaintiff because he had assigned away all of his rights in the deal, and that Sushi had not "adequately allege[d] a claim for negligent misrepresentation." The court also denied leave to amend.

After the trial court entered judgment for Hana, plaintiffs filed this timely appeal.

## DISCUSSION

Although both Sushi and Lee filed a notice of appeal from the trial court's judgment for Hana, they concede that Sushi—as the assignee of the purchase contract—is the only proper plaintiff. We therefore limit our discussion to Sushi's arguments.

Sushi argues that the trial court erred in dismissing the negligent misrepresentation claim against Hana without leave to

---

trial court sustained a demurrer to the second amended complaint with leave to amend.

5

amend.  In assessing whether the trial court erred in this ruling, we ask two questions:  "(1) Was the demurrer properly sustained; and (2) Was leave to amend properly denied?"  (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1134 (*Shaeffer*).)  In answering the first question, "we ask whether the operative complaint '"states facts sufficient to constitute a cause of action"' [citation]."  (*Cal. Dept. of Tax & Fee Admin. v. Superior Court* (2020) 48 Cal.App.5th 922, 929 (*Tax & Fee Admin.*); *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; Code Civ. Proc., § 430.10, subd. (e).)  In undertaking that inquiry, "we accept as true all ""'material facts properly pleaded'""" in the operative complaint (*Tax & Fee Admin.*, *supra*, at p. 929) as well as facts appearing in the exhibits attached to it, giving "precedence" to the facts in the exhibits if they "contradict the allegations" (*Gray v. Dignity Health* (2021) 70 Cal.App.5th 225, 236, fn. 10 (*Gray*); *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767 (*Brakke*)).

In answering the second question, we ask ""whether ""there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment.""""  (*Shaeffer*, *supra*, 44 Cal.App.5th at p. 1134.)  We review the trial court's ruling regarding the first question de novo (so, we are not bound by the court's construction of the complaint (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517)), and review its ruling regarding the second for an abuse of discretion.  (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)

## I.     Was the Demurrer Properly Sustained?

To state a claim for negligent misrepresentation, Sushi was required to allege that (1) Hana made a ""'misrepresentation'""

6

through a ""false representation, concealment, or nondisclosure"""; (2) Hana should have known of the falsity of the statement; (3) Hana acted to induce reliance; (4) Sushi justifiably relied on the misrepresentation; and (5) Sushi suffered resulting damage. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173 (*Small*); *Conroy v. Regents of Univ. of Cal.* (2009) 45 Cal.4th 1244, 1255; *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407-408.) While the operative third amended complaint alleges four misrepresentations, none supports a claim against Hana.

The first two misrepresentations Sushi alleges are not actionable because they were not made by Hana. Specifically, Sushi's allegations regarding *Yamato's* representations in the Transfer Disclosure Statement and *Yamato's* representations in the escrow instructions do not provide a basis to sue *Hana* for the simple reason that they are not *Hana's* representations. Although Sushi's operative complaint at points alleges that *Hana* made those representations, the exhibits themselves trump Sushi's counterfactual allegations. (*Gray*, *supra*, 70 Cal.App.5th at p. 236, fn. 10 [facts in exhibits trump contradictory allegations in complaint]; *Brakke*, *supra*, 213 Cal.App.4th at p. 767 [same].) As such, they are not actionable against Hana.

The third misrepresentation Sushi alleges is *itself* a misrepresentation of the facts we must take as established. Specifically, Sushi alleges that Hana misrepresented, in the Buyer's Final Settlement Statement, that Yamato's total outstanding tax liability was only $1,900. This allegation flatly contradicts what the Buyer's Final Settlement Statement actually says. What the document says is that Hana was withholding $1,900 of the funds deposited *by Sushi* to pay the sales tax owed by Sushi for the furniture and equipment Sushi

7

was buying from Yamato as part of the purchase of the restaurant. Indeed, this entry corresponds with Yamato's and Sushi's agreement, in the original escrow instructions, to withhold 9.50 percent of the $20,000 value they assigned to the furniture and equipment Sushi was buying. This entry says *nothing* about how much *Yamato* owes in sales taxes generally. Again, where the exhibits attached to the complaint show its allegations to be untrue, we must disregard them.

The fourth and final misrepresentation Sushi alleges cannot support a claim for negligent misrepresentation. Specifically, Sushi alleges that Hana "with[held] information" that somehow made the "above described" "statements"—which we have independently concluded are not actionable— "misleading" and "incomplete." But Sushi does not allege what information was withheld or that Hana had any duty to disclose that information; without these additional allegations, Hana's alleged withholding is not actionable. (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 835 ["to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obligated to disclose"]; see also *Small*, *supra*, 30 Cal.4th at p. 184 [negligent misrepresentation must be "pled with the same specificity required in a[n] . . . action for fraud"].) To the extent the theory that Hana withheld information is based on allegations Sushi had previously made about the "UCC-3" search in prior iterations of the complaint, Sushi omitted—and hence abandoned—those allegations in the operative complaint before us now. (*State Comp. Insurance Fund v. Superior Court* (2010) 184 Cal.App.4th 1124, 1130-1131 ["the amended complaint furnishes the sole basis for the cause of action, and the original

8

complaint ceases to have any effect either as a pleading or as a basis for judgment"].)

For these reasons, the trial court properly sustained Hana's demurrer. We accordingly need not reach the parties' other arguments regarding other elements of the negligent misrepresentation claim, which would at most supply additional reasons to uphold the trial court's demurrer ruling.

## II. Should Leave to Amend Have Been Granted?

The trial court did not abuse its discretion in denying Sushi leave to amend its third amended complaint. It is Sushi's burden to "show in what manner [it] can amend [its] complaint and how that amendment will change the legal effect of [its] pleading," but it has not articulated—either before the trial court or before us now—how it would amend the complaint, after four unsuccessful attempts, to state a viable cause of action against Hana. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) Indeed, Sushi's ever-changing theories in the various iterations of its complaint seeking to hold Hana liable in its role as the escrow company are inconsistent with the very role of an escrow company, which is limited to complying strictly with the instructions of the parties; its role is *not* to "police the affairs" of the parties, *not* to participate in those affairs, and *not* to act as an insurer of what turned out to be an improvident deal. (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711; *Schaefer v. Manufacturers Bank* (1980) 104 Cal.App.3d 70, 77-79; *Claussen v. First American Title Guaranty Co.* (1986) 186 Cal.App.3d 429, 435-436.)

## DISPOSITION

The judgment is affirmed.  Hana is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ