Filed 11/30/22  Swanson v. Franchise Tax Bd. of the State of Cal. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DAVID W. SWANSON, et al.<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>FRANCHISE TAX BOARD OF THE STATE OF CALIFORNIA, et al.<br><br>  Defendants and Respondents. | D079315<br><br><br>(Super. Ct. No. 37-2019-00030244-CU-MC-NC) |


APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Law Offices of Peter J. Pfund, Peter J. Pfund; and Joe Alfred Izen Jr. (*pro hac vice*) for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Lisa W. Chao and Douglas J. Beteta, Deputy Attorneys General, for Defendants and Respondents.

## INTRODUCTION

The California Constitution, article XIII, section 32,[1] states: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. *After payment of a tax claimed to be illegal*, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." (Italics added.) Commonly known as the "pay first, litigate later" rule, article XIII, section 32 means "the sole legal avenue for resolving tax disputes is a *postpayment* refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid." (*State Board of Equalization v. Superior* Court (*O'Hara & Kendall Aviation*) (1985) 39 Cal.3d 633, 638–639 (*O'Hara*), italics added.)

David and Connie Swanson disputed the proposed assessments of deficiencies in their income taxes for years 1993, 1994, and 1995 by the Franchise Tax Board (FTB). They filed a protest to the assessments, and after the FTB affirmed the assessments, they appealed to the State Board of Equalization (Board; with the FTB, Defendants). The appeal was heard and denied by the Office of Tax Appeals, the Board's successor for tax appeals. But instead of first paying the assessments and pursuing a refund claim, as required, the Swansons sued the FTB and the Board.[2] The superior court sustained Defendants' demurrer to the operative complaint without leave to amend, ruling the Swansons' claims are barred by article XIII, section 32.

---

[1]     Further article references are to the California Constitution.

[2]     The Swansons also sued the Office of Tax Appeals, but Defendants state it was never served with the operative complaint and was not a defendant. The Swansons do not dispute this assertion.

Appealing from the judgment of dismissal, the Swansons contend Government Code section 15677[3] entitled them to "a trial de novo" of their tax liability in superior court, without prepayment.  They argue so long as they do not seek "any issuance of writs, injunctions, or other equitable relief, preventing collection" of taxes during their court case, article XIII, section 32 is no bar to their action.  Because the argument rests on an incorrect understanding of article XIII, section 32 and the pay first rule, we reject it and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*California Income Tax Refund Scheme*

The personal income tax is a critical revenue source for California, and the Revenue and Taxation Code provides a comprehensive scheme for income taxation and the process by which a taxpayer may challenge the validity of a tax.  Personal income tax amounts and rates are set by statute.  (Rev. & Tax. Code,[4] § 17041.)[5]  After a taxpayer files a tax return, the FTB examines it and determines the correct amount of tax.  (§ 19032.)  If the FTB determines

---

[3]    "If a person that sought relief from a tax appeals panel disagrees with its decision, the person may bring an action in superior court in accordance with the law imposing the tax or fee for a trial de novo."  (Gov. Code, § 15677.)

[4]    Further statutory references are to the Revenue and Taxation Code, unless noted.

[5]    See section 17041 (setting forth tax "amounts and . . . rates" on specified "amount[s] of taxable income"); section 17073 (generally applying Internal Revenue Code [IRC] section 63 for taxable income, which turns on "gross income"); and section 17071 (generally applying IRC section 61 for gross income).

the tax return is deficient, it issues a notice of the deficiency proposed to be assessed. (§ 19033.) The taxpayer can file a written protest, and if the FTB affirms its assessment in whole or in part, it issues a notice of action. (§§ 19041–19045.) The taxpayer can appeal to the Office of Tax Appeals, and then petition for rehearing if the taxpayer disputes that determination. (§§ 19045–19048.) Once an assessment is final, the FTB will demand payment and the deficiency is due and payable. (§§ 19048, 19049, subd. (a).)

After paying the assessment, the taxpayer may file a claim for refund with the FTB. (§§ 19306, 19322.) The FTB may deny the claim for refund, or if it does not act within six months, the taxpayer may deem his claim denied. (§§ 19323, 19331.) The taxpayer may appeal the denial of a refund claim to the Office of Tax Appeals. (§ 19331.) Alternatively, the taxpayer can also file suit in the superior court, "*after payment of the tax* and denial by the [FTB] of a claim for refund." (§ 19382, italics added.)

## II.

### *The Swansons Dispute Federal and State Income Tax Assessments*[6]

A. *Federal Tax Proceedings*

David Swanson operated an invention business through a California trust named FSH Services. The Internal Revenue Service (IRS) sent the Swansons notices of deficiency for income taxes for years 1993, 1994, and 1995. They appealed to the United States Tax Court. While the IRS pursued a criminal investigation against a trustee of FSH Services, the Tax Court deferred the civil proceeding. In 2008, the Tax Court issued its decision,

---

[6] Because this appeal arises from a judgment of dismissal after demurrer, we take the relevant factual background from the operative First Amended Complaint (FAC) and the attached documents. As we later discuss, if there are inconsistencies, we rely on the documents. (*Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767 (*Brakke*).)

4

finding the Swansons owed $917,118 to the IRS. The Swansons appealed to the Court of Appeals for the Ninth Circuit, which affirmed the decision of the Tax Court in 2011.

In 2016, the Swansons made an offer-in-compromise to the IRS in the amount of $165,196.07. The offer-in-compromise form they filed with the IRS stated it was based on "Doubt as to Collectibility [sic] – I have insufficient assets and income to pay the full amount." The IRS accepted the offer. In 2018, the IRS notified the Swansons they had paid off their "Offer in Compromise contract" with the IRS.

B.    *State Tax Proceedings*

Meanwhile, in 2011, the FTB issued the Swansons notices of proposed assessment of state income tax deficiencies, "based on the federal determinations." The FTB determined the Swansons' state tax liability for years 1993 to 1995 was $380,346.90. The Swansons timely protested the FTB's proposed assessments. In response, the FTB asked the Swansons to provide any new information for their protest and stated it intended to affirm the assessments if it did not receive any new information by the specified date. The Swansons replied by "requesting detailed audit workpapers and an audit narrative" from the FTB.

The Swansons informed the FTB of their pending offer-in-compromise to the IRS. From 2012 to 2016, the FTB deferred the protest proceedings due to the "settlement discussions between [the Swansons] and the IRS." In 2016, the Swansons notified the FTB by letter that the IRS had accepted their offer-in-compromise. They asserted their state income tax liability for 1993, 1994, and 1995 "should be adjusted based on the IRS adjustment" of federal taxes for those years.

In 2017, the FTB issued notices of action that affirmed the proposed assessments. The FTB also sent the Swansons a letter, explaining that

5

"acceptance of a [f]ederal [offer-in-compromise] has no effect on the collection of the [FTB] assessment." It explained that where the IRS determines "the original audit was in error and adjusts specific items of income or deductions for the tax years," the FTB would adjust its assessment accordingly.[7] But acceptance of an offer-in-compromise by the IRS, "even if based on 'doubt as to collectability', does not mean that the [f]ederal audit assessment was in error. It is merely a settlement of the amount due."

The Swansons requested an in-person audit with the FTB to present what they asserted were "extremely voluminous" records. The FTB declined but invited the Swansons to submit any documentary evidence.

The Swansons appealed to the Board. In 2018, the Office of Tax Appeals[8] held a hearing before three administrative law judges, "at which [the Swansons] offered testimony and argument." In 2019, the Office of Tax Appeals issued its decision. It sustained the FTB's assessments, but reduced

---

[7] If there is a change to federally reported gross income, the FTB will compute the resulting change to state tax, and send a revised noticed of proposed deficiency. (See § 18622, subd. (a) [if item on "federal tax return, including any gross income . . . is changed or corrected by the Commissioner of Internal Revenue . . . or other competent authority," the taxpayer shall report the change after the "final federal determination . . . and shall concede the accuracy . . . or state wherein it is erroneous"], subd. (c) [notification of change or correction "must be sufficiently detailed to allow computation of the resulting California tax change"]; § 19059, subd. (a) ["notice of proposed deficiency assessment resulting from those adjustments may be mailed to the taxpayer"].)

[8] The Office of Tax Appeals is the Board's successor for tax appeals under the Taxpayer Transparency and Fairness Act of 2017 (Assem. Bill No. 102 (2017–2018 Reg. Sess.) (Assem. Bill 102); Stats. 2017, ch. 16) (TTFA). (See also § 20, subd. (b) [after July 1, 2017, any reference to the " 'board' " with respect to an appeal in the Revenue and Taxation Code means the Office of Tax Appeals].)

penalties imposed by the FTB for underpayment. The Swansons petitioned for rehearing, which the Office of Tax Appeals denied.

III.

*The Swansons File Suit Against the FTB and the Board*

A.    *First Amended Complaint*

In 2019, the Swansons sued the FTB and the Board in superior court, seeking relief from the disputed tax assessments. A month after they filed their initial complaint, the Swansons applied for an offer-in-compromise with the FTB to settle their income taxes for $14,553. The FTB declined the offer. In a denial letter sent to the Swansons, the FTB stated the Swansons had $380,346.90 in state tax liability. It explained the FTB "[g]enerally" will accept an offer-in-compromise "when the amount offered is more than the FTB can expect to collect within a reasonable amount of time, in most circumstances, five years." But here, the FTB informed the Swansons it was unable to accept their offer, "after considering all of the documentation" they provided, because: "Your years remaining in the workforce indicate you have future earning potential. This precludes FTB's justification of a $14,553.00 offer as in the State's best interest, or the most we can expect to receive within a reasonable period of time."[9]

In 2020, after an initial demurrer and party stipulation to an amended complaint, the Swansons filed the operative FAC. On the first page of the FAC, they stated they filed suit "seeking relief from tax assessments imposed by the [FTB] for tax years 1993, 1994, and 1995." They asserted two causes of action. In the first, the Swansons sought declaratory judgments to strike

---

9    According to the Swansons' briefs, the FTB gave them a hardship exemption, under which they are on "a reduced monthly payment based on inability to pay." This allegation is not in the FAC.

7

the FTB rulings and regulations under which it "purports to ignore the IRS [offer-in-compromise] and make its own [offer-in-compromise] determinations" and "purports to allow itself to deny taxpayers . . . an in-person [audit]." They noted that their state offer-in-compromise was based on their federal offer-in-compromise. The FAC describes this cause of action as seeking a "determination . . . that the [FTB] must accept its statutory percentage of the federal IRS deficiencies reduced by the federal [offer-in-compromise]." In their second cause of action, the Swansons alternatively sought "a decree or judgment redetermining [their] California income tax liabilities for tax years 1993, 1994, and 1995 in a 'trial de novo,' " citing Government Code section 15677. The Swansons further alleged that because the FAC "does not seek to prevent or enjoin the collection of taxes," the "so-called 'full payment rule' is inapplicable," and that they had "fully exhausted all administrative remedies." In the same cause of action, they also sought a "decree adjudging that [they] are entitled to the benefit of the income tax amnesty program" which limitations period expired during the IRS abatement period.

Nowhere in the FAC do the Swansons allege they have paid the challenged state income tax assessments.

B.    *Defendants' Demurrer*

Defendants demurred to the FAC, on the ground the action was "barred by California's 'pay first, litigate later' rule and prohibition on actions that interfere with collection of taxes," as set forth in article XIII, section 32 and Revenue and Taxation Code sections 19381 and 19382. (Capitalization omitted.) Defendants argued that "[b]efore [the Swansons] can challenge [the] FTB's assessments against them in Superior Court, [they] must pay those assessments and file a claim for refund before [the] FTB." And here, they "did none of those things." Defendants further argued Government Code

8

section 15677 could not save the FAC because "the action it allows must be brought 'in accordance with the law imposing the tax or fee.' " Lastly, they argued the Board was not a proper defendant, because, among other things, it did not decide the appeal, and that the Swansons' claims failed on the merits.

In opposition, the Swansons argued that article XIII, section 32, barred only entry of injunctions and other relief "which prevent . . . [the] FTB from assessing, enforcing, and collecting state income taxes." They argued that after the Office of Tax Appeals' decision sustaining the FTB assessments, "there is no restriction on FTB's further assessment and collection" of taxes against the Swansons (underline omitted), and "[i]ndeed, [the] FTB has continued attempts to collect those taxes" from them. For these reasons, they argued article XIII, section 32 was no bar to a trial de novo of their income tax liability under Government Code section 15677. They further contended the rule of lenity required construal of tax provisions in their favor, and that the Board's role was unclear and it should not be dismissed.

C.    *The Superior Court's Ruling*

The superior court issued a tentative ruling for Defendants. The court concluded the Swansons' action sought "to prevent collection of . . . assessments before they are paid and before [they] have filed a claim for refund." It agreed with Defendants the action was barred by article XIII, section 32's " 'pay first, litigate later' rule and prohibition on actions that interfere with collection of taxes" and because the Swansons failed to exhaust their administrative remedies. The court also agreed with Defendants that Government Code section 15677 only provides for a superior court action " 'in accordance with the law imposing the tax or fee,' and does not repeal existing

9

law concerning the prerequisites to suit." It further rejected the Swansons' argument that the rule of lenity applied. Noting the rule is invoked only where "two reasonable interpretations of the same provision stand in relative equipoise," the court found "sections 19381 and 19382 are not ambiguous." The court further concluded the Swansons did not have a cognizable claim against the Board.

At the demurrer hearing, the court heard argument and advised counsel that it was accepting Defendant's view that Government Code section 15677 "does not change existing law that required taxpayers to pay before litigating." The court asked the Swansons if they sought leave to amend, and their attorney responded they did not have any facts to do so. Accordingly, the court entered a minute order sustaining the demurrer without leave to amend, incorporating the tentative ruling without material change. The superior court entered a judgment of dismissal, and the Swansons timely appealed.

## DISCUSSION

The Swansons contend Government Code section 15677 can be read consistently with article XIII, section 32, to provide that a taxpayer is "entitled to a trial de novo" of tax liability in superior court without prepayment, but is "not entitled to any issuance of writs, injunctions, or other equitable relief, preventing collection" of taxes during the court case, and that the rule of lenity requires accepting this interpretation. We disagree. Because the entire argument rests on an incorrect understanding of article XIII, section 32, and the pay first rule, we begin there. We then turn to Government Code section 15677, the rule of the lenity, and, finally, issues that the Swansons did not address at all (the lack of a claim against the Board) or until reply (administrative exhaustion).

10

I.

*Standard of Review*

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)  And if it does, we ask whether that complaint nevertheless discloses some defense or bar to recovery.  (See *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183.) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

"We also consider the complaint's exhibits." (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.)  "While the 'allegations [of a complaint] must be accepted as true for purposes of demurrer,' the 'facts appearing in exhibits attached to the complaint will also be accepted as true and, if contrary to the allegations in the pleading, will be given precedence.' " (*Brakke, supra,* 213 Cal.App.4th at p. 767; accord, *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 190–191.)

"In considering a trial court's order sustaining a demurrer without leave to amend, ' "we review the trial court's result for error, and not its legal reasoning." ' " (*Morales v. 22nd Dist. Agricultural Assn.* (2018) 25 Cal.App.5th 85, 93.)  We " 'affirm the judgment if it is correct on any theory.' " (*Ibid.*)  "And when [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank,*

11

*supra*, 39 Cal.3d at p. 318.)  "The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Ibid.*)

II.

*The "Pay First, Litigate Later" Rule Bars the Swansons' Lawsuit*

The trial court correctly held article XIII, section 32 and California's income tax laws bar the Swansons from seeking prepayment judicial review of the tax assessments they dispute.  As our high court has explained: "Article XIII, section 32 provides that an action to recover an allegedly excessive tax bill may be brought '[after] payment of [that] tax . . . .' Additionally, the section bars a court from issuing any 'legal or equitable process . . . against this State or any officer thereof to prevent or enjoin the collection of any tax.'  Read together, these two portions of [article XIII,] section 32 establish that the sole legal avenue for resolving tax disputes is a postpayment refund action.  A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid."  (*O'Hara*, *supra*, 39 Cal.3d at p. 638; accord *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1101 (*Loeffler*).)

Article XIII, section 32 has been "a bedrock principle of tax law for over a century because the public policy it effectuates is fundamental to the continued operation of our state."  (*Cal. Dept. of Tax & Fee Admin. v. Superior Court* (*Kintner*) (2020) 48 Cal.App.5th 922, 931 (*Kintner*).)  "[T]he policy behind the provision is to ensure that the state may continue to collect tax revenue during litigation in order to avoid unnecessary disruption of public services that are dependent on that revenue."  (*Loeffler*, *supra*, 58 Cal.4th at p. 1101.)  "[D]elay in tax collection ' "may derange the operations of government, and thereby cause serious detriment to the public." ' "  (*Ibid.*) "By requiring taxpayers to pay disputed taxes up front (rather than allowing

12

taxpayers to withhold the payment of taxes until disputes over taxation are resolved in litigation), [article XIII,] section 32 ensures that the blood of the body politic keeps pumping[.]"  (*Kintner*, at p. 931.)

To serve that important end, article XIII, section 32 "has been construed broadly to bar not only injunctions but also a variety of prepayment judicial declarations or findings which would impede the prompt collection of a tax."  (*O'Hara, supra,* 39 Cal.3d at p. 639; accord *Loeffler, supra,* 58 Cal.4th at pp. 1101–1102 ["In sum, . . . '[article XIII, section 32] applies if the prepayment judicial determination sought would impede tax collection.' "].)  Where " 'the net result of the relief prayed for . . . would be to restrain the collection of the tax allegedly due, the action must be treated as one having that purpose.' "  (*O'Hara,* at p. 642; *ibid.* [action there would "require adjudication of [taxpayer's] tax liability," and was "constitutionally prohibited"]; see *California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247 (*California Logistics*) [issue is "whether granting the relief sought would have the *effect* of impeding the collection of a tax," italics added]; *Kintner, supra,* 48 Cal.App.5th at p. 931 [declaratory relief claims with " 'net result' or 'effect' " of "resolving a disputed tax claim are subject to [article XIII,] section 32's 'pay first, litigate later' rule"].)

Further still, "[a]rticle XIII, section 32 also requires that tax refund actions be brought solely according to *procedures* established by the Legislature.  It vests power over tax procedure in the Legislature, and limits or governs the authority of the courts over tax collection disputes."  (*Loeffler, supra,* 58 Cal.4th at p. 1102.)  As our high court has observed, "[t]his deference also serves the state's interest in being able to plan for needed public expenditures, and 'rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that

13

governmental entities may engage in fiscal planning based on expected tax revenues.'" (*Ibid.*)  Here, we agree with the trial court that the Legislature was unambiguous in the procedures it established for income tax refund actions.

The prohibition on actions that interfere with income tax collection and the pay first rule set forth in article XIII, section 32 is also incorporated into the Revenue and Taxation Code—specifically, sections 19381 and 19382. Section 19381 provides:  "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this state or against any officer of this state to prevent or enjoin the assessment or collection of any tax[.]"  Section 19382 then specifies:  "*[A]fter payment of the tax and denial by the [FTB] of a claim for refund*, any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the [FTB] for the recovery of the whole or any part of the amount paid."  (Italics added.)  Other statutory provisions incorporate the prohibition on actions that interfere with tax collection (e.g., §§ 4807 [property tax], 6931 [sales and use tax], 13101 [insurance tax], to name a few), and require prepayment and refund claims before filing suit (e.g., §§ 6932, 13102). Taxpayers "cannot circumvent the administrative procedures the tax code provides for ascertaining the application" of a tax.  (*Loeffler*, *supra*, 58 Cal.4th at p. 1128; *ibid*. [no "declaratory judgment . . . in advance of paying the tax"].)

In sum, a "taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid."  (*O'Hara*, *supra*, 39 Cal.3d at p. 638; accord, *Loeffler*, *supra*, 58 Cal.4th at p. 1101.)  Here, there is no dispute the Swansons did not pay the tax assessments at issue, which exceed

14

$370,000. Yet, they now seek a judgment that would require the FTB to accept "its statutory percentage of the federal IRS deficiencies reduced by the federal [offer-in-compromise]" (presumably referring to their state offer-in-compromise amount of $14,553). Alternatively, they seek a trial de novo on tax liability, or a decree that they are entitled to the benefit of an amnesty program. Further, the Swansons expressly acknowledge at the outset of their FAC that they "seek[ ] relief from tax assessments imposed" by the FTB. Each form of relief they seek would have the effect of restraining collection of a tax, because the FTB would be unable to collect all taxes due. (See *Kintner*, *supra*, 48 Cal.App.5th at p. 932 [plaintiff sought declaration that sales tax policy and regulation were illegal and unconstitutional; because declaration would negate the basis for the unpaid assessment, the "net result or effect of [his] declaratory relief claims is to absolve him of tax liability"].) Accordingly, absent prepayment, the Swansons' action is barred. (Art. XIII, § 32; Rev. & Tax Code, §§ 19381, 19382; see *O'Hara*, *supra*, 39 Cal.3d at pp. 638–639.) We conclude the superior court properly sustained Defendants' demurrer without leave to amend.

The Swansons arguments to the contrary lack merit. First, they contend article XIII, section 32, "simply prohibits a California court . . . from restricting assessment and/or collection of taxes by writ, injunctive relief, or otherwise, until full payment of an assessment is made." They further contend "there is no restriction on [the] FTB's further collection of [their] income tax liability," as evidenced by the FTB's continuing demand for payment from the Swansons. (Boldface omitted.) And since they "are not requesting and have not obtained any restriction on [the] FTB's . . . collection of the tax assessments in question" in their action, it is not barred by article XIII, section 32.

15

The argument fails. Article XIII, section 32, does not just bar a court from restricting tax collection, before payment. It bars a party from *bringing* a lawsuit whose *effect* would be to limit tax collection. (*O'Hara*, *supra*, 39 Cal.3d at p. 640; *California Logistics, supra,* 161 Cal.App.4th at p. 247; *Kintner*, *supra*, 48 Cal.App.5th at p. 931.) The Revenue and Taxation Code also bars parties from bringing such lawsuits. (See §§ 19381, 19382; cf. *Loeffler*, *supra*, 58 Cal.4th at p. 1128.) Furthermore, the Swansons' position is inconsistent with the purpose of the pay first rule: to preserve revenue collection while tax litigation is pending. (*Loeffler,* at p. 1101). To defer the rule's application until the granting of judicial relief would undermine that purpose. As for FTB's ability to seek payment during litigation, a revenue stream requires that payments be *made*, not simply demanded.

Second, the Swansons contend that we should apply the statutory interpretation principle that the "law does not concern itself with trifles" (i.e., "de minimis non curat lex"), because their FAC did not request "a writ, injunctive relief, or other equitable process" restricting collection and Defendants' purported "fear" that they might request such relief or that the superior court might grant it is "de minim[is] and a trifle." But the Swansons still sought relief that would have the effect of limiting tax collection. The Defendants' substantive concerns are not de minimis, either, given that the Swansons' state income tax liability is at least $370,000—hundreds of thousands of dollars in excess of their state offer-in-compromise. *Texas Co. v. County of Los Angeles* (1959) 52 Cal.2d 55, cited by the Swansons here, involves inapposite facts and mentioned the no trifles principle only in passing. (*Id.* at pp. 60–61 [affirming judgments for defendants in suit to recover taxes on possessory interests in public land, involving a dispute over valuation methods; discussing a case that supported defendants' position, and

16

noting the erroneous $200 deduction in taxpayer's favor in that case, which the county did not appeal, did not require the assessment to be set aside, citing "de minimis non curat lex" (italics omitted)].)

Third, the Swansons direct us to *Enochs v. Williams Packing & Navigation Co., Inc.* (1962) 370 U.S. 1, 7 (*Enochs*), which recognized an exception to federal prepayment law that applies when the government cannot prevail. They do not establish that this exception applies here. In *Enochs*, a corporation sued to obtain a district court injunction on collection of federal taxes, the appellate court affirmed, and the United States Supreme Court reversed. (*Id.* at pp. 2, 7–8.) Addressing federal law limiting such injunctions, the Court explained that "if it is clear that under no circumstances could the Government ultimately prevail . . . collection may be enjoined if equity jurisdiction otherwise exists." (*Id.* at p. 7; *ibid.* [it must be "apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim"].) The Court determined the government's claim "was not without foundation," and directed the district court to dismiss the complaint. (*Id.* at p. 8.)

The California Supreme Court has limited *Enochs*'s application in state tax claims to federal constitutional issues. (See *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 815, 839 [declining to reach validity of proposition provision on insurance premium tax, as doing so would violate art. XIII, § 32]; *id.* at pp. 838–839 [ "[s]ince the federal courts permitted prepayment relief" when " ' " 'under no circumstances' can the government prevail," ' " the Court "adopted that same standard for state prepayment suits asserting federal constitutional issues," but the petitioners' challenges "raise[d] only state constitutional issues"].) The Swansons have not established that their FAC raises substantive federal constitutional issues,

17

but even if they did, they do not demonstrate that it contains allegations to show that "under the most liberal view of the law and the facts," the FTB cannot prevail. (*Enochs, supra*, 370 U.S. at p. 7.) They cannot rely on *Enochs*.[10]

### III.

*Government Code Section 15677 Did Not Change the Pay First Rule*

The Swansons argue that Government Code section 15677, enacted in 2017, entitles them to a trial de novo of their tax liability in superior court, without first paying the disputed taxes. Defendants maintain this section is subject to existing tax law, and so it does not disturb the pay first rule. We agree with Defendants.

In construing a statute, "our primary task is to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] The Legislature's language is the best indicator of its intent. [Citation.] The words of the statute 'must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must, to the extent possible, be harmonized.' " (*926 North Ardmore Ave., LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328 (*926 N. Ardmore*); *J.P. Morgan Trust Co. of Delaware v. Franchise Tax Bd.* (2022) 79

---

[10] On reply, the Swansons suggest that FTB hardship relief (which they claim they received) is another exception from the pay first rule. We need not consider points raised on reply, and this one does not help them regardless. (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 (*Stroh*) ["[p]oints raised for the first time in a reply brief will ordinarily not be considered"].) The rule is meant to limit prepayment *litigation*; the FTB remains free to exercise flexibility in how it collects payments, including in cases of hardship. (Cf. *O'Hara, supra,* 39 Cal.3d at pp. 642–643 [stating that its decision (i.e., enforcing the pay first rule) did not limit Board's ability to accept partial or installment payments].)

Cal.App.5th 245, 262 (*J.P. Morgan*) [" 'We construe the language in the context of the statutory framework as a whole, always mindful of the policies and purposes underlying the enactment and endeavoring to read the language so as to conform to its spirit.' "]; *Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519 ["If the statutory language is clear and unambiguous, then we need go no further."].) " 'The principles of constitutional interpretation are similar to those governing statutory construction.' " (*Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 418.) However, "statutory provisions must yield to constitutional provisions." (*Kintner, supra*, 48 Cal.App.5th at. p. 933.)

Government Code section 15677 is part of the TTFA, which became effective July 1, 2017. (Assem. Bill 102; Stats. 2017, ch. 16.) The TTFA's purpose was to "enact changes to the [Board] that put fairness, consistency, and transparency of the tax administration and appeals processes in the forefront." (Stats. 2017, ch. 16, § 2, subd. (j).) The TTFA restructured the Board's functions by establishing the Department of Tax and Fee Administration and the Office of Tax Appeals, and transferring most powers and duties to these entities. (Stats. 2017, ch. 16, § 5 [establishment of the Department of Tax and Fee Administration]; Gov. Code, § 15570, et. seq.; Stats. 2017, ch. 16, § 13 [establishment of the Office of Tax Appeals]; Gov. Code, § 15670, et seq.; see also *GMRI, Inc. v. California Dept. of Tax & Fee Administration* (2018) 21 Cal.App.5th 111, 115, fn. 1 [describing enactment of law].)

The Office of Tax Appeals was made "successor to, and vested with, all of the duties, powers, and responsibilities of the [Board] necessary or appropriate to conduct appeals hearings." (Gov. Code, § 15672.) The TTFA set forth a number of specific provisions regarding the Office of Tax Appeal's

operations, including that it would be under control of a director appointed by the governor (Gov. Code, § 15670, subd. (b)), there would be appeal panels (Gov. Code, § 15670, subd. (c)), it would issue written opinions (Gov. Code, § 15675), persons could have representatives in tax appeals (Gov. Code, § 15676), and—relevant here—that "[i]f a person that sought relief from a tax appeals panel disagrees with its decision, the person may bring an action in superior court *in accordance with the law imposing the tax* or fee for a trial de novo."[11]  (Gov. Code, § 15677, italics added.)

We conclude Government Code section 15677 was not intended to change the pay first rule.  Focusing first on the text, the statute expressly states that a person may file a superior court action for a trial de novo "in accordance with the law imposing the tax"—that is, existing tax law.  (Gov. Code, § 15677.)  And existing law included the pay first rule.  (Art. XIII, § 32; Rev. & Tax Code, §§ 19381, 19382.)  Nor is this requirement in tension with the availability of a trial de novo.  The right to a trial de novo *in* superior court does not conflict with a prepayment requirement to *get to* superior court.

Viewing the statute in the context of the broader statutory scheme, we discern no legislative intent to limit the pay first rule.  Rather, the TTFA's purpose was to reorganize California's tax system to enhance fairness,

---

[11]    The TTFA had been amended shortly after it became effective.  (Assem. Bill No. 131 (2017–2018 Reg. Sess.; approved by Governor, Sept. 16, 2017).)  The original version of Government Code section 15677 included the language focused upon by the parties:  "in accordance with the law" and "de novo."  (Stats. 2017, ch. 16, § 13, former Gov. Code, § 15677 ["The person filing the appeal may appeal the decision of the tax appeals panel to the superior court in accordance with the law imposing the tax or fee.  The standard of judicial review to be applied by the superior court shall be review de novo."].)

20

consistency, and transparency, and the provisions regarding the Office of Tax Appeals described in detail how administrative appeals would work—including as to subsequent superior court actions. We do not see, and the Swansons do not explain, how eliminating the pay first rule for such actions would advance the TTFA's purposes.

The arguments that the Swansons do make are not persuasive. First, the Swansons state the issue is "what the Legislature meant when it inserted the term 'de novo' " in Government Code section 15677. They suggest it was to "grant . . . enhanced rights to appeal," and argue that if the pay first rule applies, then the "term 'de novo' was meaningless surplusage." They seem to suggest that the only reason for Government Code section 15677 was to allow tax lawsuits without prepayment. But this interpretation improperly views the section in isolation, rather than in the " 'context of the statutory framework as a whole' " (*J.P. Morgan, supra,* 79 Cal.App.5th at p. 262), as required, and also ignores the "in accordance with the law" language elsewhere in the section. (See *926 N. Ardmore, supra*, 3 Cal.5th at p. 328 [words of statute " 'must be construed in context' "].)

Second, the Swansons contend, in substance, that because the Legislature was aware of article XIII, section 32, its grant of a trial de novo in Government Code section 15677 without such limitations repealed the pay first rule for trials de novo. They relatedly contend that cases prior to the section's enactment in 2017 did not prevent such repeal, and are irrelevant. These contentions lack merit. Government Code section 15677 provides for a trial de novo "in accordance" with existing tax law, which includes the pay first rule. Even if the section were silent, " '[i]mplied amendments or repeals by implication are disfavored.' " (*Wilde v. City of Dunsmuir* (2020) 9 Cal.5th 1105, 1117 (*Wilde*); see *Kintner*, *supra*, 48 Cal.App.5th at pp. 933–934

21

[declaratory relief action to contest regulation validity under Gov. Code, § 11350 was not exempt from pay first rule, even though statute did not address it; implied repeals are " 'disfavored' unless the conflicting statutes are 'irreconcilable' " and "statutory provisions must yield to constitutional provisions"].)

We also decline to ignore earlier case law. We conclude Government Code section 15677 did not change the pay first rule erected by article XIII, section 32, and the cases prior to the TTFA's enactment in 2017 remain pertinent.

IV.

*The Rule of Lenity Does Not Apply Here*

The Swansons also urge us to apply the rule of lenity, which requires resolution of doubts in a criminal defendant's favor, citing *People v. Avery* (2002) 27 Cal.4th 49, 57 (*Avery*). The superior court determined that the rule of lenity did not apply, because it requires ambiguity and sections 19381 and 19382 are unambiguous. Defendants argue that *none* of the relevant constitutional or statutory provisions are ambiguous. Again, we agree with Defendants.

In *Avery*, the California Supreme Court rejected a criminal defendant's reliance on the rule of lenity, explaining:

> " 'The rule [of lenity] applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule.' [Citation] . . . . 'The rule of statutory interpretation that ambiguous penal statutes are construed in favor of defendants is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' " (*Avery*, *supra*, 27 Cal.4th at p. 58.)

Here, as our discussion above reflects, we can do far more than guess as to the meaning of article XIII, section 32, Revenue and Taxation Code

sections 19381 and 19382, and Government Code section 15677. The first three impose the pay first rule, and the latter provides a trial de novo in accordance with that rule. Even if any of these provisions were ambiguous, the Swansons' proposed interpretations are unpersuasive, and do not stand in the required " 'relative equipoise' " to justify application of the rule of lenity. (*Avery*, *supra*, 27 Cal.4th at p. 58.)

The Swansons do not convince us otherwise. First, they contend the rule of lenity "requires that the 'de novo' provisions of . . . Government Code [section] 15677 be given their literal and operative effect," so long as it would not "restrict[ ] . . . assessment and collection of taxes by the FTB" (i.e., referencing their interpretation of article XIII, section 32). They elsewhere refer to the "literal meaning" of both Government Code section 15677 and article XIII, section 32. But the rule of lenity requires *ambiguity*, and, again, the clear meanings of these provisions are contrary to those advanced by the Swansons. (*Avery*, *supra*, 27 Cal.4th at p. 58; cf. *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1330–1331 ["[T]here is no ambiguity in [Insurance Code] section 381's language that would require us to consider the rule of lenity"].)

Second, the Swansons cite *Thompson v. C.I.R.* (2020) 155 T.C. 87, asserting the rule of lenity is applied to federal tax disputes. But the *Thompson* court declined to apply the rule, in part because, as here, the litigants did not identify a sufficient ambiguity to do so. (*Id.* at pp. 94–95 [rejecting reliance on rule of lenity and "related strict construction canon, by which ambiguity in revenue-raising and penalty laws should be construed in the taxpayer's favor," noting there must be " ' "grievous ambiguity or uncertainty' in the statute' " and " 'the simple existence of some statutory ambiguity' " does not suffice].)

23

## V.

### *The Swansons Do Not Establish Error as to the Board or Administrative Exhaustion*

Finally, the superior court sustained the Defendants' demurrer on two additional grounds:  the Swansons did not assert a cognizable claim against the Board, and did not exhaust administrative remedies.  The Swansons do not address either issue in their opening brief and, on reply, address only exhaustion (and without citing any California authorities besides Government Code section 15677).   We deem any such challenges forfeited. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [due process issue forfeited, where appellant did not raise issue on appeal]; *Stroh, supra*, 10 Cal.App.4th at p. 1453 [issues raised on reply are forfeited].)

Even if we reached the Swansons' belated exhaustion point, we would reject it.  Their failure to wait to file suit until "after payment of the tax and denial by the [FTB] of a claim for refund" meant they did not exhaust their administrative remedies.  (§ 19382; see *Loeffler, supra*, 58 Cal.4th at p. 1128 [taxpayers "cannot . . . go to court for declaratory relief . . . without first exhausting administrative remedies by making a claim for refund"]; *Aronoff v. Franchise Tax Board* (1963) 60 Cal.2d 177, 180 [petitioners "failed to exhaust . . . administrative remedies" before FTB because they had "not paid their taxes or filed claims for refund"]; see also *Shiseido Cosmetics (America) Ltd. v. Franchise Tax Bd.* (1991) 235 Cal.App.3d 478, 489 [suit for refund of taxes paid under protest was still barred for failure to file refund claim].)

The Swansons maintain that Government Code section 15677 does not "mention . . . full payment" or require a "claim for refund," and, therefore, they did not bypass administrative remedies.   But, as we just explained, trials de novo under Government Code section 15677 are "in accordance" with

24

existing law, including Revenue and Taxation Code section 19382 and its requirements. To the extent the Swansons are again asserting that Government Code section 15677 effected an implied repeal, we have already rejected that argument. (See *Wilde*, *supra*, 9 Cal.5th at p. 1117; *Kintner*, *supra*, 48 Cal.App.5th at pp. 933–934.)[12]

In sum, we conclude the superior court properly sustained Defendants' demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

DO, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

---

[12]    Because we conclude that the Swansons could not proceed with this lawsuit, we need not and do not address whether their FAC claims were otherwise viable. We also do not address most of the many non-California authorities they cite, as they are not necessary for resolution of this appeal.