Filed 1/11/23  Sanders v. Madden CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JASMIN SANDERS, | B316082 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV43958) |
| v. | |
| HEATHER MADDEN et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County, Bernie LaForteza, Judge.  Reversed and remanded with directions.

Law Offices of Chris Connolly and Chris Connolly for Plaintiff and Appellant.

Wallace, Brown & Schwartz, George M. Wallace and Lisa J. Brown for Defendants and Appellants Joyce Lee and Heather Madden.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez and Timothy R. Windham for Defendant and Respondent Access Specialty Animal Hospital.

———————————

Dennis, Monireh Anvary's cat and comfort animal, died after being treated by Joyce Lee, D.V.M. and Heather Madden, D.V.M. at Access Specialty Animal Hospital.  Alleging the veterinarians had failed to follow her instruction not to use flea control medication, administered other unauthorized medicine and intentionally misrepresented Dennis's deteriorating condition to induce Anvary to leave the cat at Access Hospital for further treatment, Anvary sued Dr. Lee, Dr. Madden and Access Hospital for trespass to chattel, conversion and deceit in an amended complaint that omitted the cause of action for negligence alleged in Anvary's original pleading.

The trial court dismissed Anvary's case after sustaining demurrers without leave to amend, ruling Code of Civil Procedure section 340, subdivision (c)'s one-year statute of limitations for claims of veterinary malpractice barred each of Anvary's causes of action.[1]  We reverse and remand with directions for the trial court to enter a new order sustaining

---

[1]    Code of Civil Procedure section 340, subdivision (c), provides, in part, an action must be commenced within one year "against any person who boards or feeds an animal or fowl or who engages in the practice of veterinary medicine as defined in Section 4826 of the Business and Professions Code for that person's neglect resulting in injury or death to an animal or fowl in the course of boarding or feeding the animal or fowl or in the course of the practice of veterinary medicine on that animal or fowl."

2

without leave to amend the demurrers to the causes of action for trespass to chattel and conversion but overruling the demurrers to Anvary's cause of action for deceit (fraud).

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Anvary's Complaint and First Amended Complaint*

Dennis died in the early morning of December 7, 2017 after being treated for approximately 18 hours by Dr. Lee and Dr. Madden at Access Hospital.  On December 6, 2019 Anvary sued the two veterinarians and Access Hospital, alleging in an unverified complaint causes of action for general negligence, trespass to chattel, conversion and deceit.

Drs. Lee and Madden and Access Hospital demurred and moved to strike portions of the original complaint, arguing in part all four causes of action were barred by the one-year limitations period governing suits against veterinarians for the injury or death of an animal under their care.  Rather than defend her original complaint, on June 12, 2020 Anvary filed a first amended complaint, omitting the cause of action for negligence and reasserting her causes of action for trespass to chattel, conversion and deceit.

In support of her claims Anvary alleged she brought Dennis to Access Hospital at 8:00 a.m. on December 6, 2017 because the cat had been unable to urinate for a day and had a cold.  Dr. Lee, the attending veterinarian, told Anvary the cat had a urinary obstruction and would need to be hospitalized for three days to have the obstruction removed.

As alleged in the first amended complaint, Anvary asked Dr. Lee not to administer any unnecessary drugs to Dennis, especially flea control medication, because the cat had suffered a seizure in the past after being given flea medicine.  Dr. Lee

3

responded the flea medication used at Access Hospital was safe and would not harm Dennis. Anvary then pointed out there were warning labels on flea medication stating it should not be given to sick cats and repeated she did not want any flea medication given to Dennis. Anvary left Dennis at Access Hospital, paying a $2,300 deposit for Dennis's care before departing.

At 11:00 a.m. Anvary called the hospital and was told by Dr. Lee that the urinary obstruction had been caused by a mucous plug on the tip of the cat's penis that had been wiped off, permitting Dennis to urinate. However, Dr. Lee advised Anvary that Dennis needed to remain hospitalized for three days to have his kidney numbers lowered. (Those numbers, Dr. Lee explained, had increased due to the urinary tract obstruction.) During the remainder of the day Anvary called Access Hospital multiple times and came to the hospital during visiting hours. She was told, at the direction of Dr. Lee and Dr. Madden, that they were making "great progress" with Dennis's kidney numbers and the cat was "doing great."

Approximately 18 hours after bringing Dennis to Access Hospital (that is, at approximately 4:00 a.m. on December 7, 2017), Dr. Madden's assistant told Anvary her cat's body temperature had dropped suddenly. Anvary, now believing the hospital staff had been lying to her all along concerning Dennis's condition, immediately went to the hospital to pick up the cat and take him to a different clinic. When the assistant brought the cat out, he appeared comatose; but the assistant assured Anvary, despite how Dennis looked, the cat's body temperature had returned to normal and he was again doing great. Shortly after Anvary left the hospital with Dennis, the cat began having seizures. He died an hour later.

4

Anvary alleged she learned from the hospital's medical and itemized billing records that Dennis had been given two doses of flea medication, subsequently suffered a seizure as a result, and was then given an overdose of antiseizure medication by Dr. Madden. In addition, the records indicated Dennis started to vomit after being medicated at the hospital and was treated with anti-nausea medication rather than being evaluated for a drug overdose or drug allergy.

Anvary alleged Drs. Lee and Madden and Access Hospital held themselves out as experts in the examination and treatment of cats and, as such, owed her a duty to administer to Dennis the proper dosages of medication and not to use flea medication or any other medication that was not necessary to treat his infection and kidney issues. They also owed her a duty to truthfully advise her of the medications being administered and inform her of Dennis's reaction to the medication. According to Anvary, Dennis died as a result of Drs. Lee and Madden and Access Hospital's improper and unnecessary treatment and care. The administration of unauthorized medications, as well as the misrepresentations concealing Dennis's true condition, Anvary averred, was intentional. Further, she alleged, the misrepresentations about Dennis's condition and failure to accurately disclose the true situation were intended to, and did, induce Anvary to keep Dennis at the hospital, thereby incurring additional costs.

2. *The Renewed Demurrers*

Access Hospital and Drs. Lee and Madden again demurred and moved to strike portions of the amended complaint. Access Hospital argued all three causes of action arose out of a claim for veterinary malpractice and were barred by the governing one-

year statute of limitations.  The hospital also argued the facts alleged in the first amended complaint failed to state causes of action for trespass to personal property, conversion or fraud.  The motion to strike was directed to Anvary's allegations in support of her prayer for punitive damages and for emotional distress and other noneconomic damages, which Access Hospital asserted were not recoverable in a veterinary malpractice action.

Drs. Lee and Madden similarly argued Anvary's claims were subject to the one-year statute of limitations in section 340, subdivision (c),[2] and that the first amended complaint failed to allege facts sufficient for a cause of action for trespass to chattel or conversion.  The veterinarians also asserted Anvary had not alleged the elements of deceit (fraud) with the requisite particularity.  Their motion to strike was directed to the allegations of punitive damages.

Anvary filed oppositions to the demurrers and motions to strike, and the defendants filed reply memoranda.  After multiple continuances and procedural mishaps, the court ultimately heard Access Hospital's demurrer on May 27, 2021 and Drs. Lee and Madden's on August 30, 2021.

3. *The Trial Court Orders Sustaining the Demurrers Without Leave To Amend*

The court sustained Access Hospital's demurrer without leave to amend, ruling the lawsuit was time-barred under section 340, subdivision (c).  Explaining it was undisputed Anvary's claims arose out of veterinary treatment, the court agreed with Access Hospital that all three causes of action "sound in professional malpractice because the cat received the wrong

---

[2]     Statutory references are to the Code of Civil Procedure unless otherwise stated.

medication and/or too much medication." While acknowledging Anvary could pursue her claims under alternate theories, the court ruled the underlying allegations were insufficient to state intentional torts with longer statutes of limitation "outside of the context of the veterinary treatment that was given." The court rejected Anvary's argument her complaint was timely under the doctrine of delayed discovery or tolling based on her receipt of the medical billing records after Dennis's death, noting Anvary had not alleged when she received the records or why she could not have obtained them earlier than she did. In addition, the court found Anvary was on inquiry notice of the alleged malpractice when the animal's injuries were first observed.

Because it sustained the demurrer based on the statute of limitations, the court did not consider Access Hospital's challenge to the individual causes of action. Concluding Anvary could not amend the complaint to state claims that did not sound in veterinary malpractice, the court denied leave to amend. The motion to strike was denied as moot.

Several months later, in a ruling that mirrored the order sustaining Access Hospital's demurrer without leave to amend, the court sustained the demurrer of Drs. Lee and Madden and denied their motion to strike as moot.

A judgment of dismissal was entered in favor of Access Hospital on August 20, 2021 and in favor of Dr. Lee and Dr. Madden on August 30, 2021. Anvary filed timely notices of appeal.[3]

---

[3] Anvary passed away at some point while her appeal was pending. On December 5, 2022, after briefing was completed and oral argument scheduled for this court's January 2023 calendar, Jasmin Sanders moved to substitute for Anvary as the personal

7

**DISCUSSION**

1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the trial court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

A demurrer based on an affirmative defense is properly sustained when the face of the complaint and matters judicially noticed clearly disclose the defense or bar to recovery. (See *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224; see also *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191; *Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 130-132.) If "'the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the "plaintiff must 'plead around' the defense, by alleging specific facts that would avoid the apparent defense. Absent such allegations, the complaint is subject to demurrer for failure to

---

representative of Anvary's estate. We granted the motion. For simplicity, however, we refer to Anvary throughout our opinion.

8

state a cause of action." "' (*Esparza v. County of Los Angeles* (2014) 224 Cal.App.4th 452, 459.)

We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 848), but liberally construe the pleading with a view to substantial justice between the parties. (§ 452; *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726; see *Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1081.)

"'Where the complaint is defective, "[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his [or her] complaint."'" (*Aubry v. Tri-City Hospital Dist., supra*, 2 Cal.4th at p. 970.) A plaintiff may demonstrate for the first time to the reviewing court how a complaint can be amended to cure the defect. (§ 472c, subd. (a) ["[w]hen any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made"]; see *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132 [plaintiff may carry burden of proving an amendment would cure a legal defect for the first time on appeal]; *Rubenstein v. The Gap, Inc.* (2017) 14 Cal.App.5th 870, 881 ["'[w]hile such a showing can be made for the first time to the reviewing court [citation], it must be made'"].)

2. *Dr. Lee's and Dr. Madden's Alleged Mistreatment of Dennis Occurred in the Course of the Practice of Veterinary Medicine*

Although conceding a one-year statute of limitations governs an action against a veterinarian for neglect causing the injury or death of an animal "in the course of the practice of veterinary medicine on that animal" (§ 340, subd. (c)), Anvary contends giving Dennis flea control medication (contrary to her instructions not to do so) was an ancillary grooming act, not the practice of veterinary medicine, and thus outside the scope of section 340, subdivision (c). This argument reads both the governing statute and her own pleading far too narrowly.

As discussed, in her first amended complaint Anvary alleged not only that the defendants treated Dennis with flea control medication notwithstanding her instructions but also that, after the cat had a seizure, administered an overdose of antiseizure medication and improperly treated Dennis with anti-nausea medication. It was this combination of improper and unnecessary treatment, Anvary alleged, that caused Dennis's death.[4] Accepting Anvary's characterization that treating a cat with flea medication is a nonprofessional activity, even if performed at a veterinary hospital, what she alleged as the basis

---

[4] For example, in paragraphs 13 and 14 Anvary alleged that the antiseizure medication given to Dennis at the hospital, in addition to being far too large a dose, should not have been given to a cat with high kidney numbers and "was also not supposed to follow an anti-nausea medication or a pain medication (both of which drugs had been administered to the plaintiff's cat by the hospital earlier that day) and could trigger a loss of liver function as a consequence."

for her claims against Drs. Lee and Madden and Access Hospital was unquestionably the practice of veterinary medicine.

More fundamentally, Anvary's cramped interpretation of the scope of section 340, subdivision (c), is based on a misunderstanding of the case law construing analogous section 340.5, part of the Medical Injury Compensation Reform Act (MICRA), which specifies the limitations period for personal injury actions "against a health care provider based upon such person's alleged professional negligence."[5] As Anvary states, relying upon *Aldana v. Stillwagon* (2016) 2 Cal.App.5th 1, not every negligent action by a health care provider will be considered professional negligence subject to MICRA. In *Aldana* the defendant, a paramedic supervisor, was driving a pickup truck to the location of an injured victim to oversee responding emergency medical technicians and provide any necessary assistance. En route the supervisor failed to make a complete stop at a red light and collided with the plaintiff's vehicle. (*Id.* at pp. 4-6.) Division Six of this court held driving to the third party

---

[5] Code of Civil Procedure section 340.5, subdivision (1), defines a "health care provider" to include any person licensed or certified pursuant to Division 2 of the Business and Professions Code, Healing Arts, as do other provisions of MICRA (e.g., Code Civ. Proc., § 364; Civ. Code, § 3333.2). Business and Professions Code sections 4825 requiring a license to practice veterinary medicine in California, 4826 defining the practice of veterinary medicine, and 4846 prescribing the requirements to obtain a license to practice veterinary medicine, are all part of Division 2. Thus, veterinarians are health care providers within the meaning of MICRA. (*Vazquez de Mercado v. Superior Court* (2007) 148 Cal.App.4th 711, 714 ["veterinarians fall within the provisions of MICRA"].)

11

victim did not constitute "professional services," a task requiring "no particular medical skills" and the plaintiff's personal injury action was not barred by MICRA's one-year-from-date-of-discovery limitations period. (*Id.* at p. 7.)

Anvary omits from her opening brief's discussion of the proper interpretation of professional negligence under MICRA *Flores v. Presbyterian Intercommunity Hospital (*2016) 63 Cal.4th 75 (*Flores*), in which the Supreme Court explained, although the phrase "professional services" ordinarily means services that can be judged against the skills commonly possessed by other members of the profession, "this does not mean that section 340.5 applies only to those specific tasks that require advanced medical skills and training. A medical professional or other hospital staff member may commit a negligent act in rendering medical care, thereby causing a patient's injury, even where no particular medical skills were required to complete the task at hand." (*Id.* at p. 85.)[6]

The issue in determining whether a negligent act is one of professional negligence under section 340.5, the *Flores* Court held, is whether it "was reasonably required to treat or accommodate a physical or mental condition of the patient." (*Flores*, *supra*, 63 Cal.4th at p. 88; see *Mitchell v. Los Robles Regional Medical Center* (2021) 71 Cal.App.5th 291, 298

---

[6] Flores alleged she was injured when the latch on the rail on her hospital bed malfunctioned. (*Flores*, *supra*, 63 Cal.4th at p. 89.) The Supreme Court held the MICRA statute of limitations applied because a doctor had made a medical decision that the rails on Flores's bed be raised and her injuries resulted from the negligent maintenance of equipment integrally related to her medical diagnosis and treatment. (*Ibid*.)

[section 340.5 applied to personal injury action brought by emergency room patient who fell when allowed to walk to the restroom unattended; "[w]e recognize that accompanying someone to the restroom is not a sophisticated medical procedure. But that is not determinative. Section 340.5 applies to more than tasks that 'require advanced medical skills and training'"].) An act reasonably related to the treatment being provided, the Supreme Court explained, "implicates a duty that the hospital owes to a patient by virtue of being a health care provider," and MICRA applies. (*Flores*, at p. 88.)

Anvary misses the point when she argues in her reply brief that giving Dennis flea control medicine was not necessary or integrally related to his treatment at Access Hospital, as required by *Flores* to constitute professional negligence, because she had not brought him to the hospital to resolve a flea problem. Anvary may not have thought it necessary. But Anvary's pleading established that Dr. Lee did, as evidenced by her allegation that, after Anvary asked that Dennis not be given flea medication, Dr. Lee responded by saying the medication used at Access Hospital was safe and would not harm the cat—a clear statement that Dr. Lee intended to administer the medication (either to treat Dennis or protect other animals at the hospital from a flea infestation or both). Even if not part of the treatment of the particular ailments that prompted Anvary to bring Dennis to Access Hospital, nothing in her first amended complaint indicates treating the cat for fleas, let alone administering the other medication given Dennis on December 6 and 7, 2017, was anything other than a normal part of the practice of veterinary

medicine at the hospital, implicating the duty it owed to Anvary as a health care provider.[7]

3. *Anvary's Causes of Action for Trespass to Chattel and Conversion Are Predicated on the Veterinarians' Negligence and Barred by the One-year Statute of Limitations*

"To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action.  [Citations.] '[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations.'" (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23; accord, *Sznyter v. Malone* (2007) 155 Cal.App.4th 1152, 1161; see *Burchell v. Faculty Physicians & Surgeons etc.* (2020) 54 Cal.App.5th 515, 523 [When a plaintiff seeks to evade the restrictions of MICRA by asserting only seemingly non-MICRA causes of action, "the court must determine whether a cause of action framed as something other than medical malpractice is nevertheless based on a health care provider's professional negligence . . . .  The focus of the court's analysis must be on 'the nature or gravamen of the claim, not the label or form of action the plaintiff selects'"]; *Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 353 [same].)

---

[7]    In addition, because it was anticipated that Dennis would be kept at Access Hospital for three days, administering flea control medication, even if not necessary for his medical treatment, is properly viewed as occurring during the course of boarding the animal within the meaning of section 340, subdivision (c).

Anvary's allegations that Drs. Lee and Madden and Access Hospital wrongfully exercised dominion over Dennis, her personal property—constituting the tort of conversion[8]—and injured her through their intentional interference with her possession of Dennis—the tort of trespass to chattel[9]—are predicated, as was her original cause of action for negligence, on

[8] "Conversion is an 'ancient theory of recovery' with roots in the common law action of trover. [Citations.] 'This action originated at an early date as a remedy against the finder of lost goods who refused to return them to the owner but instead 'converted' them to his own use.' [Citation.] Over time, the action was extended to cases involving 'dispossession, or . . . withholding possession by others than finders.' [Citation.] Today, the tort of conversion is understood more generally as 'the wrongful exercise of dominion over personal property of another.' [Citations.] [¶] As it has developed in California, the tort comprises three elements: '(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages.' [Citations.] Notably absent from this formula is any element of wrongful intent or motive; in California, conversion is a 'strict liability tort.'" (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150; see *Fong v. East West Bank* (2018) 19 Cal.App.5th 224, 231 [conversion is the wrongful exercise of dominion over the property of another].)

[9] "Under California law, trespass to chattels 'lies where an intentional interference with the possession of personal property has proximately caused injury.'" (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1350-1351, italics omitted.) The elements of a cause of action for trespass to chattel are the plaintiff's possession of the property, the defendant's intentional interference with the plaintiff's use of the property without the plaintiff's consent and damages. (*Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1566-1567.)

the defendants' breach of their duty of care as health care professionals when diagnosing and treating Dennis. That is, it was the veterinarians' "neglect" in the course of their practice of veterinary medicine, albeit in the form of affirmative acts that proved to be injurious rather than omissions, that allegedly constituted wrongful interference with Anvary's use of her personal property.[10] As such, section 340, subdivision (c)'s one-year limitations period, not the three-year period in section 338, subdivision (c)(1), for actions for taking, detaining or injuring goods or chattel, applies to Anvary's claims for conversion and trespass to chattel.

Anvary contends section 340, subdivision (c), is inapplicable to the causes of action alleged in her first amended complaint because they are predicated on Dr. Lee's and Dr. Madden's intentional acts, not their "neglect." Anvary's argument posits a false dichotomy between intentional or purposeful acts and negligent ones, incorrectly suggesting an action based on neglect only lies for accidental (unintended) conduct. Plainly that is not so: "Negligence is either the omission of a person to do something which an ordinarily prudent person would have done under given circumstances or the doing of something which an ordinarily prudent person would not have done under such circumstances." (*Acqua Vista Homeowners Assn. v. MWI, Inc.* (2017) 7 Cal.App.5th 1129, 1157; internal quotation marks omitted]; accord, *Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 507; see

---

[10] Although we have some doubt whether Anvary stated facts sufficient to constitute causes of action for conversion and trespass to chattel, because we affirm the trial court's rulings based on the statute of limitations as to these two causes of action, we need not address that additional argument.

16

CACI No. 401 ["[a] person can be negligent by acting or failing to act"]; cf. *American Internat. Bank v. Fidelity & Deposit Co.* (1996) 49 Cal.App.4th 1558, 1573 ["'[n]egligent' and 'accidental' are not synonymous"].)  It is the failure to use reasonable care, not the unintended or inadvertent nature of the underlying conduct, that makes an act negligent.  (See *Acqua Vista Homeowners Assn.*, at p. 1157.)

Driving a car fast is intentional conduct, for example, but driving too fast for existing weather and road conditions constitutes negligence because it breaches the driver's duty of care, just as parking a car in an unsafe location, while intentional, may be the basis for an action in negligence.  (See, e.g., *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 768.)  Similarly, prescribing or administering medications that turn out to be unnecessary or in the wrong dosage, although intentional, would be actionable only if the physician's or veterinarian's conduct violated the applicable standard of care—that is, when based on professional negligence.[11]  Anvary recognized as much in her original complaint where, after describing the intentional administration of flea control medicine and other unnecessary

---

[11]     In contrast, deliberately striking a dog with a bat would not be intentional conduct that breached a duty of care; if not otherwise justified, it is intentional misconduct (wrongful intentional conduct).  (See, e.g., *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1605-1607 [trespass to personal property cause of action based on defendant attacking plaintiffs' dog with a bat]; see also *Unruh-Haxton v. Regents of University of California*, *supra*, 162 Cal.App.4th at p. 355 [allegations of stealing and then selling a person's genetic material for financial gain implicate wrongful intentional conduct, not merely professional negligence].)

medication while Dennis was being treated at Access Hospital, she nonetheless alleged it was the negligent care of Dennis by Drs. Lee and Madden that led to the cat's death.

4. *Anvary Is Not Entitled to the Benefit of the Delayed Discovery Rule*

"The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)  Traditionally, a claim accrues ""when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.'" (*Ibid.*; accord, *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815.)  "This is [known as] the 'last element' accrual rule." (*Aryeh*, at p. 1191.)

An exception to the general rule of accrual is the delayed discovery rule, "which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.)  "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110.)  In other words, the limitations period begins "'once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry.  [Citation.] Subjective suspicion is not required.  If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation.'" (*McCoy v. Gustafson* (2009)

18

180 Cal.App.4th 56, 108; accord, *Fox*, at pp. 807-808; *Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1251.)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'" (*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 808.) "When a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence . . . can support only one reasonable conclusion." (*Stella v. Asset Management Consultants, Inc.*, *supra*, 8 Cal.App.5th at p. 193; accord, *Broberg v. The Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 921.)

Conflating the rules for demurring based on an affirmative defense—matters on the face of the complaint or subject to judicial notice must clearly bar recovery—and those for pleading the applicability of the delayed discovery rule, Anvary erroneously contends, because the date of her discovery of the facts underlying her claims was not directly alleged in the first amended complaint, the demurrers based on the statute of limitations should have been denied.

The first amended complaint alleged that mistreatment of Dennis by Drs. Lee and Madden and Access Hospital on December 6 and 7, 2017 caused Dennis's death on December 7, 2017, establishing on its face the accrual of Anvary's causes of action more than a year before Anvary filed her original

19

complaint absent properly pleaded facts supporting application of the delayed discovery rule. Anvary failed to carry that pleading burden.

While Anvary's first amended complaint implied she did not learn of the improper administration of medication until she reviewed medical and billing records, she pleaded neither the time of discovery (when she first received those records) nor her inability to discover the underlying facts earlier than she did, both of which are required for the delayed discovery rule to apply. To the contrary, Anvary alleged she learned the hospital had been lying to her about Dennis's condition before she picked up the cat at 4:00 a.m. on December 7, 2017, information that was sufficient, when coupled with the cat's death later that morning, to put her on notice that further inquiry was necessary. (See *Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 807 ["[a] plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements'"]; see also *Stella v. Asset Management Consultants, Inc.*, *supra*, 8 Cal.App.5th at p. 193 [pleading failed as a matter of law to support application of the delayed discovery rule because allegations showed plaintiff did not exercise reasonable diligence].)[12]

5. *Anvary Pleaded a Distinct Cause of Action for Fraud Subject to a Three-year Statute of Limitations*

"'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

---

[12] Anvary has never sought leave to amend to address delayed discovery or suggested she was unaware of the facts supporting her claims more than a year before filing her lawsuit.

20

'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

Anvary's cause of action for deceit (fraud), unlike her causes of action for conversion and trespass to chattel, was not predicated solely on allegations that Drs. Lee and Madden and Access Hospital provided improper care and treatment to Dennis. Although Anvary alleged the defendants repeatedly misrepresented Dennis's condition when she called to check on his status "to cover up their wrongdoings" and claims that misinformation prevented her from possibly saving the cat's life by taking him to a different clinic—allegations closely linked to those for veterinary malpractice—she also alleged misrepresentations were knowingly made to persuade her to keep Dennis at Access Hospital, avoiding a demand for a refund of her initial deposit, and with the intention of causing her to incur additional costs. Those allegations of fraud for financial gain fall outside the scope of section 340, subdivision (c), and instead are governed by section 338, subdivision (d)'s three-year limitations period. The claim for deceit is not time-barred.

6. *Anvary Adequately Alleged Her Fraud Cause of Action*

"[F]raud must be pled specifically; general and conclusory allegations do not suffice. Thus the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect. [¶] This particularity requirement necessitates pleading *facts* which show how, when, where, to whom, and by what means the representations were tendered." (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 993 [cleaned up]; accord, *Lazar v. Superior Court*, *supra*, 12 Cal.4th at p. 645 ["A plaintiff's burden in asserting a

21

fraud claim against a corporate employer is even greater.  In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written'"].)  "However, 'the requirement of specificity is relaxed when the allegations indicate that "the defendant must necessarily possess full information concerning the facts of the controversy" [citations] or "when the facts lie more in the knowledge of the"' defendant."  (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1008.)

In their demurrers Drs. Lee and Madden and Access Hospital argued Anvary failed to sufficiently and specifically plead the necessary elements of her cause of action for fraud. The trial court did not reach this issue because it ruled the fraud cause of action was subject to, and barred by, section 340, subdivision (c)'s one-year statute of limitations.

Access Hospital presses this point on appeal, emphasizing that Anvary failed to allege to whom she spoke during her status update telephone calls and whether that person was a technician, assistant or doctor.  The hospital also argues Anvary failed to properly allege reliance and causation and asserts the various misrepresentations alleged by Anvary were all nonactionable statements of medical opinion regarding Dennis's condition.

Although she did not identify the speaker(s), Anvary alleged the misleading status updates were made at the direction of Drs. Lee and Madden, they were intentionally false and she believed and reasonably relied upon them in allowing Dennis to remain at Access Hospital.  No greater specificity is required at the pleading stage, particularly since those conversations all took place during a brief 18-hour time span and it is likely Access

Hospital will have records indicating which staff members were on duty during that time, even if not the names of the individuals who spoke with Anvary. And the contention the challenged statements were nonactionable clinical assessments, an argument only vaguely alluded to in the trial court, is not persuasive: Under the circumstances as alleged by Anvary, statements of opinion may be actionable. (See *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 769 [fraud claim may be based on opinion "'(1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; [or] (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion"]; *Borba v. Thomas* (1977) 70 Cal.App.3d 144, 152 [same].)

Although Anvary's claim of fraud for financial gain (rather than to cover-up veterinary malpractice) is adequately pleaded, greater detail concerning the material facts Anvary contends were intentionally concealed or suppressed to induce her to leave Dennis at Access Hospital, as well as additional information concerning the affirmative misrepresentations made to her and the identity of the individuals she spoke to on December 6 and 7, 2017, would benefit the parties and the trial court. Whether Anvary choses to provide that information in a second amended complaint or in discovery responses, however, is a decision for her and her counsel.

## DISPOSITION

The orders of dismissal are reversed. The cause is remanded with instruction to the trial court to vacate its orders

23

sustaining the demurrers without leave to amend, to enter new orders sustaining without leaving to amend the demurrers to the causes of action for trespass to chattel and conversion and overruling the demurrers to the cause of action for deceit, and for further proceedings not inconsistent with this opinion.  The parties are to bear their own costs on appeal.


                                    PERLUSS, P. J.
        We concur:



        FEUER, J.



        HOWARD, J.*

---

*        Judge of the Marin County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.